1   MICHAEL R. SHERWOOD, State Bar No. 63702
    GEORGE M. TORGUN, State Bar No. 222085
2   Earthjustice
    426 17th Street, 5th Floor
3   Oakland, CA 94612
    (510) 550-6725
4
    MICHAEL GRAF, State Bar No. 136172
5   Law Offices
    227 Behrens Street
6   El Cerrito, CA 94530
    (510) 525-7222
7
    Attorneys for Plaintiffs Sierra Forest Legacy, Sierra Club,
8   and California Native Plant Society
9   RACHEL M. FAZIO, State Bar No. 187580
    John Muir Project
10  P.O. Box 697
    Cedar Ridge, CA 95924
11  (530) 273-9290
12  Attorney for Plaintiff Earth Island Institute

13              IN THE UNITED STATES DISTRICT COURT
14              FOR THE NORTHERN DISTRICT OF CALIFORNIA
15
16  SIERRA FOREST LEGACY, SIERRA CLUB,            Case No: **07      2646**
    EARTH ISLAND INSTITUTE, and
17  CALIFORNIA NATIVE PLANT SOCIETY, non-
    profit organizations,                          COMPLAINT FOR DECLARATORY AND
18                                                  INJUNCTIVE RELIEF
                  Plaintiffs,
19                                                  (Administrative Procedure Act case)
              v.
20
    BERNARD WEINGARDT, in his official
21  capacity as Regional Forester, Region 5, United
    States Forest Service, EDWARD C. COLE, in his
22  official capacity as Forest Supervisor, Sierra
    National Forest, United States Forest Service,
23  ABIGAIL R. KIMBELL, in her official capacity
    as Chief of the United States Forest Service, and
24  UNITED STATES FOREST SERVICE, an
    agency of the United States Department of
25  Agriculture,
26                Defendants.
27
28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**INTRODUCTION**

1.      Plaintiffs bring this action to challenge the United States Forest Service's approval of the Kings River Project ("Project"), a massive logging plan in the heart of critical habitat for the imperiled Pacific fisher and other sensitive wildlife species that inhabit the old forests of the southern Sierra Nevada.  The Forest Service approved the Kings River Project despite widespread opposition from leading scientists and wildlife biologists concerned about the Project's significant adverse impacts on the dwindling fisher population.  The aggressive logging promoted by the agency is contrary to sound science and does not provide a management approach that will actually achieve the Project's purported goals of conducting meaningful research or restoring a healthy forest ecosystem.

2.      Plaintiffs allege that in approving the Kings River Project, defendants Bernard Weingardt, *et al*. ("defendants" or "Forest Service") violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, by failing to provide adequate information or analysis regarding the Project's likely environmental impacts, failing to take a hard look at or consider a reasonable range of alternatives, and failing to respond adequately to public comments and scientific information.  Plaintiffs also contend that the Kings River Project violates the National Forest Management Act ("NFMA"), 16 U.S.C. § 1604, and the APA by failing to insure the viability and distribution of imperiled old forest species such as the Pacific fisher, and failing to gather and disclose legally required monitoring data for numerous at-risk species.  Plaintiffs seek an order vacating and remanding the Forest Service's approval of the Kings River Project to remedy the violations of NEPA, NFMA, and the APA, and enjoining the Forest Service from implementing the Project.

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

3.      This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1331 (action arising under the laws of the United States) and 5 U.S.C. § 702 (Administrative Procedure Act), and may issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201-02 (Declaratory Judgment Act).  Plaintiffs have exhausted all administrative remedies available to them pursuant to 36 C.F.R. Part 215.

4.      Venue lies in this judicial district by virtue of 28 U.S.C. § 1391(e) because plaintiffs Sierra Club and Earth Island Institute are incorporated in California and reside and maintain their headquarters in the County of San Francisco, and this action seeks relief against federal officials acting in their official capacities.

5.      Assignment to the San Francisco Division of this judicial district is proper because plaintiffs Sierra Club and Earth Island Institute are incorporated in California and maintain their headquarters in the County of San Francisco.  Civil L.R. 3-2(c).

## PARTIES

6.      Plaintiff Sierra Forest Legacy, formerly known as the Sierra Nevada Forest Protection Campaign, is a coalition of 99 local, regional, and national environmental organizations dedicated to protecting and restoring the Sierra Nevada's national forests, including the Kings River Project area in Sierra National Forest.  Formed in 1996, Sierra Forest Legacy works to protect and restore the ancient forests, wildlands, wildlife, and watersheds of the Sierra Nevada through scientific and legal advocacy, public education and outreach, and grassroots forest protection efforts.  Sierra Forest Legacy has sought to achieve greater protections for the Pacific fisher, California spotted owl, and other old forest dependent species.  Since the late 1980s, Sierra Forest Legacy's founding members have been involved in major policy decisions and research initiatives relating to Sierra Nevada national forest management and species conservation, including the California Spotted Owl Sierran Province Interim Guidelines of 1993 ("CASPO Interim Guidelines"), the Sierra Nevada Ecosystem Project of 1996, the 2001 Sierra Nevada Forest Plan Amendment ("2001 Framework"), and the 2004 revisions to the 2001 Framework ("2004 Framework").  Sierra Forest Legacy actively participated in the planning process for the Kings River Project, commented on the draft and final environmental impact statements ("EISs"), and administratively appealed defendants' approval of the Project.

7.      Plaintiff Sierra Club is a non-profit conservation organization formed in 1892 with over 750,000 members nationwide, approximately 185,000 of whom reside in California.  The Sierra Club is organized under California law and is headquartered in the County of San Francisco.  The Sierra Club's purposes are to explore, enjoy, and protect the wild places of the Earth, to practice and promote responsible uses of the Earth's ecosystems and resources, to educate and enlist humanity in

the protection and restoration of the quality of the natural and human environment and to use all lawful means to carry out those objectives. For many years the Sierra Club and its members have advocated for the protection of forest ecosystems throughout California. These advocacy efforts have included forest mapping and identification of remaining ancient forest areas, lobbying for and achieving funding for numerous forest conservation efforts, and urging protection for imperiled forest species, including the Pacific fisher and California spotted owl. Since the late 1980s, the Sierra Club has actively tracked and participated in major policy decisions and research initiatives relating to Sierra Nevada national forest management and species conservation, including the California Spotted Owl Sierran Province Interim Guidelines of 1993, the Sierra Nevada Ecosystem Project of 1996, the 2001 Framework, and the 2004 Framework. The Sierra Club participated in the planning process for the Kings River Project, commented on the draft and final EISs, and administratively appealed the Project.

8.      Plaintiff Earth Island Institute ("EII") is a nonprofit corporation organized under California law and headquartered in San Francisco, California. EII's mission is to develop and support projects that counteract threats to the biological and cultural diversity that sustains the environment. Through education and activism, these projects promote the conservation, preservation, and restoration of the Earth. One of these projects is the John Muir Project, whose mission is to protect all federal public forest lands from commercial exploitation. EII is a membership organization with over 15,000 members in the United States, over 3,000 of whom use and enjoy the national forests of California for recreational, educational, aesthetic, spiritual, and other purposes. EII through its John Muir Project has a longstanding interest in the protection of national forests, and accomplishes this objective by ensuring that the Forest Service relies upon and addresses all scientific evidence in its decision-making process and that its decisions comply with all federal environmental laws. EII's John Muir Project and EII members actively participate in governmental decision-making processes with respect to national forest lands in California and rely on information provided through NEPA to increase the effectiveness of their participation. EII's John Muir Project actively participated in the NEPA and NFMA processes associated with the

development of the Kings River Project, including submitting comments on the draft EIS and administratively appealing the decision.

9. Plaintiff California Native Plant Society ("CNPS") is a nonprofit organization organized under California law with nearly 10,000 members, both professional botanists and laypersons, dedicated to the preservation of California's rich native botanical heritage. The mission of the California Native Plant Society is to increase the understanding and appreciation of California's native plants and to preserve them in their natural habitat through scientific activities, education, and conservation. CNPS members work closely with Forest Service personnel and other State and Federal agencies to manage and conserve botanical resources. CNPS is particularly concerned with the conservation of California's rare and endemic plant species and threatened plant communities. CNPS participated in the planning process for the Kings River Project, commented on the draft EIS, and administratively appealed the Project.

10. The plaintiff organizations described above each have members who live or work in communities located near or adjacent to the national forests in the Sierra Nevada, and specifically near the site of the Kings River Project in Sierra National Forest. Plaintiffs' members use and enjoy areas in and around the Kings River Project for a variety of purposes including, but not limited to, hiking, backpacking, photography, botanizing, hunting and fishing, scientific study, and wildlife observation, including observation of rare, imperiled, and sensitive wildlife species. They intend to continue to do so on an ongoing basis in the future. Plaintiffs' members derive recreational, scientific, spiritual, professional, aesthetic, educational, and other benefits and enjoyment from these activities.

11. Defendants' approval of the Kings River Project in violation of NEPA, NFMA, and the APA as alleged below has harmed and injured, and is continuing to harm and injure, the interests of plaintiffs and their members by causing or threatening irreversible adverse effects to the Kings River Project area and to the imperiled wildlife and other objects of interest in Sierra National Forest. Defendants' actions deprive plaintiffs and their members of the recreational, scientific, spiritual, professional, aesthetic, educational, and other benefits they presently derive from the Kings River Project area. Additionally, defendants' actions deny plaintiffs' members their right to have the

1  laws of the land implemented and enforced, and the satisfaction and peace of mind associated with

2  witnessing the implementation and enforcement of this nation's environmental protection laws.

3       12.    Consequently, plaintiffs and their members have been, are being, and will continue to

4  be adversely affected and irreparably injured by defendants' approval of the Kings River Project.

5  These injuries are actual and concrete and would be redressed by the relief sought herein.  Plaintiffs

6  have no adequate remedy at law.

7       13.    Defendant Bernard Weingardt is the Regional Forester for the Forest Service's

8  Pacific Southwest Region, which encompasses the Sierra National Forest, and in that capacity has

9  the responsibility to ensure that the Forest Service acts in accordance with applicable laws and

10  regulations.  Mr. Weingardt's office denied the plaintiffs' administrative appeals of the Record of

11  Decision ("ROD") approving the Kings River Project and its associated Final Environmental Impact

12  Statement ("FEIS").  He is sued in his official capacity.

13       14.    Defendant Edward Cole is the Forest Supervisor for the Sierra National Forest and

14  was the official who initially approved the ROD and FEIS for the Kings River Project.  In his

15  capacity as Forest Supervisor, he has the responsibility to ensure that the Forest Service acts in

16  accordance with applicable laws and regulations.  He is sued in his official capacity.

17       15.    Defendant Abigail R. Kimbell is the Chief of the Forest Service.  The Chief is the

18  highest ranking officer in the Forest Service.  The Chief has the responsibility to ensure that the

19  Forest Service acts in accordance with applicable laws and regulations.  She is sued in her official

20  capacity.

21       16.    Defendant United States Forest Service is an agency of the United States government

22  within the United States Department of Agriculture.  The Forest Service has been delegated

23  authority to administer the national forest system of the United States.  In that capacity, the Forest

24  Service must comply with NEPA and NFMA in planning and implementing projects which may

25  have a significant effect on the environment.

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF           5

**BACKGROUND OF AGENCY PROCEEDINGS**

**Forest Planning in the Sierra Nevada**

17.    The Sierra Nevada's eleven national forests contain some of our Nation's most diverse and spectacular public lands.  Covering approximately 11.5 million acres, these forests provide habitat for numerous wildlife species, including the Pacific fisher and California spotted owl.  However, more than a century of logging, livestock grazing, road construction, development, and related activities have taken a heavy toll on the Sierra Nevada's natural resources.

18.    Beginning in the late 1980s, the Forest Service has developed land and resource management plans ("LRMPs") for each of the national forests in the Sierra Nevada pursuant to NFMA, 16 U.S.C. § 1604.  The Forest Service adopted an LRMP governing the management of Sierra National Forest, including the Kings River Project area, in 1992.

19.    In 1998, the Forest Service initiated a process to develop new management direction for several urgent problem areas with Sierra Nevada-wide significance, including the decline of old forest ecosystems and associated species.

20.    On January 12, 2001, the Forest Service signed a Record of Decision adopting the Sierra Nevada Forest Plan Amendment (known as the "2001 Framework"), which amended the forest plans for all eleven national forests in the Sierra Nevada, including Sierra National Forest. The 2001 Framework struck a careful balance between reducing the risk of catastrophic wildfire and protecting old forests and wildlife.  In particular, the 2001 Framework emphasized logging of small trees (generally less than 12-20 inches in diameter), which contribute the most to wildfire risk, while protecting medium and large trees (generally greater than 20 inches in diameter), which are most important for wildlife like the Pacific fisher and California spotted owl.  To protect species associated with old forests, the plan required that logging projects should maintain at least 50 percent canopy cover in most westside forests, and prohibited the reduction of preexisting canopy cover by more than 20 percent.  The 2001 Framework specifically protected habitat zones for old forest dependent species, including the "Southern Sierra Nevada Fisher Conservation Area" and spotted owl "Home Range Core Areas" around owl nest sites.

1    21.    On January 21, 2004, the Forest Service adopted a Record of Decision approving

2    substantial revisions to the 2001 Framework (the "2004 Framework"), which again amended the

3    forest plans for the eleven Sierra Nevada national forests, including Sierra National Forest.  The

4    2004 Framework substantially weakened the 2001 Framework's protection of old forests and

5    associated species.  Compared to the 2001 Framework, the 2004 Framework allows larger trees to be

6    logged (up to 30 inches in diameter in almost all land allocations) and allows greater reductions in

7    canopy cover (down to 40 percent and less).  The 2004 Framework, in nearly all instances,

8    eliminates all of the legally binding standards and guidelines that were included in the 2001

9    Framework to protect the Southern Sierra Nevada Fisher Conservation Area and spotted owl Home

10   Range Core Areas, and allows such areas to be logged pursuant to the less protective guidelines for

11   general forest areas.

12   **The Kings River Project**

13   22.    The Kings River Project proposes logging operations, herbicide treatments, and

14   prescribed fire on 131,500 acres in the Dinky Creek and Big Creek watersheds of Sierra National

15   Forest over the next 25 years.  Phase I of the Project, which is the initial portion approved by the

16   Forest Service, authorizes the "treatment" of 13,847 acres within eight management units.  This

17   phase authorizes the logging of trees up to 30 inches in diameter, including 6,000 acres of uneven-

18   aged logging and 1,865 acres of defensible fuel profile zone ("DFPZ") logging, and more than 9,000

19   acres of prescribed burning.  Approximately 7,600 acres of Phase I are classified as "commercial

20   harvest" and are expected to produce over 23 million board feet of timber.  Implementation of Phase

21   I is expected to commence in 2007 and continue over a three-year period.

22   23.    Phase II of the Kings River Project is expected to involve similar treatments for 60

23   additional units in the remaining acreage between 2011 and 2033.  However, the Forest Service

24   states that specific treatments for these units will depend on monitoring and research results from the

25   eight units in Phase I, and that further site-specific NEPA analysis will be conducted.

26   24.    On January 27, 2006, the Forest Service issued a draft EIS for Phase I of the Kings

27   River Project containing two alternatives: the proposed action (Alternative 1) and the no action

28   alternative (Alternative 2).  Plaintiffs Sierra Forest Legacy, Sierra Club, Earth Island Institute, and

California Native Plant Society submitted comments on the draft EIS for Phase I on or prior to March 28, 2006.

25.     The Forest Service released its FEIS for Phase I of the Kings River Project in October 2006, which contained a new "Reduction of Tree Harvest Size Alternative" (Alternative 3). Plaintiffs Sierra Forest Legacy and Sierra Club submitted supplemental comments on the FEIS on November 20, 2006, and plaintiff Earth Island Institute submitted supplemental comments on November 22, 2006.

26.     The Forest Supervisor (defendant Cole) signed the Record of Decision for Phase I of the Kings River Project on December 20, 2006, selecting Alternative 3 from the FEIS as the decision to be implemented.

27.     Plaintiffs Earth Island Institute and California Native Plant Society each administratively appealed the decision to the Regional Forester (defendant Weingardt) on February 3, 2007, and plaintiffs Sierra Forest Legacy and Sierra Club filed an administrative appeal on February 5, 2007.

28.     The Forest Service failed to offer plaintiffs a timely appeal resolution meeting as required by 36 C.F.R. § 215.17(b).  Plaintiffs met with the Forest Supervisor (defendant Cole) on March 14, 2007 to make a substantial appeal resolution offer, but plaintiffs' offer was rejected by the Forest Supervisor on March 16, 2007.

29.     The Regional Forester (defendant Weingardt), acting through his Deputy, denied all administrative appeals of the Kings River Project on March 20, 2007, and affirmed the Forest Supervisor's decision to approve the Project.  Consequently, no legal obstacle now prevents the Forest Service from advertising and awarding timber sale contracts pursuant to the Kings River Project, and logging can begin as soon as conditions permit.

**Old Forest Wildlife and Sensitive Plant Species in the Kings River Project Area**

30.     Numerous old forest dependent wildlife species occur or potentially occur in the Kings River Project area and will be adversely affected by implementation of the Project.  These include several management indicator species, species at risk, Forest Service designated "sensitive" species, and at least two species found to be warranted for listing under the Endangered Species Act.

31.     The Pacific fisher (*Martes pennanti*) is a forest carnivore that inhabits dense, older forests in the southern Sierra Nevada, including the Kings River Project area, which is only a small portion of its historic range. The fisher is among the most habitat-specific mammals in North America, utilizing large areas of primarily coniferous forests with fairly dense canopies and large trees, snags, and downed logs. Recent research in the southern Sierra confirms that medium and large trees, such as those that will be logged by the Kings River Project, are an important element of high quality fisher habitat, especially in providing for fisher rest sites.

32.     On April 8, 2004, the U.S. Fish and Wildlife Service ("FWS") found that the west coast population of the fisher warrants listing under the Endangered Species Act, but deferred listing due to workload constraints (a "warranted but precluded" decision). 69 Fed. Reg. 18,770 (Apr. 8, 2004). According to the FWS, "preliminary analyses indicate West Coast fisher populations, particularly in the southern Sierra, may be at significant risk of extinction." *Id.* at 18,789. The FWS cites logging as one of the primary causes of fisher decline in the Sierra Nevada. *Id.* at 18,778.

33.     Recent data indicates that the southern Sierra population of the Pacific fisher may number between just 100 to 500 individuals, with as few as 50 female fishers remaining. Given the current low density of fishers in the southern Sierra Nevada, the loss of even a small number of individuals could significantly impact the population.

34.     In 2006, the Conservation Biology Institute ("CBI"), a non-profit scientific research organization based in Corvallis, Oregon, was commissioned by the Forest Service to conduct a "Southern Sierra Nevada Fisher Assessment," which involves compiling all available data on fisher populations and habitat in the southern Sierra Nevada, assessing their current status, and predicting how they are likely to respond to various alternative forest management actions, as well as unmanaged events such as wildfires, drought, or bark beetle outbreaks. The assessment is designed to create a scientifically credible set of habitat maps and estimates of fisher population size and distribution in the southern Sierra Nevada based on current conditions, as well as an assessment of how fisher habitat and populations are likely to change in the future under a range of alternative scenarios.

35.     The Forest Service has decided to move forward with the Kings River Project, which authorizes logging in prime fisher habitat, even though the CBI assessment has not been completed.

36.     The Kings River Project is located within and encompasses approximately 5% of the Southern Sierra Nevada Fisher Conservation Area, a region designated for protection by the Forest Service in the 2001 Framework.  Much of the Kings River Project area is considered to be high quality fisher habitat, and as many as 36 individuals may reside within the Project boundaries. Approximately 13,700 acres in Phase I of the Kings River Project may include portions of 13 fisher home ranges, including home ranges that extend beyond the Phase I project area.

37.     Implementation of the Kings River Project will adversely affect the fisher population by causing a significant loss of key habitat in the southern Sierra Nevada and threatening the survival of this species.

38.     The California spotted owl (*Strix occidentalis occidentalis*) is a medium-sized raptor with large dark eyes and mottled brown and white coloring.  California spotted owls inhabit the Sierra Nevada mountain range from Shasta County in the northern Sierra Nevada south to Kern County, including the Kings River Project site within Sierra National Forest.  The owl is closely associated with the structural attributes of older forests in the Sierra Nevada, including medium and large trees, dense canopy cover, and large snags and down logs.  Preferred habitat for the California spotted owl consists of mixed conifer forests dominated by trees larger than 24 inches in diameter and with 70 percent or greater canopy cover for nesting and roosting and 50 percent or greater canopy cover for foraging.  The Forest Service has designated the California spotted owl as a "sensitive" species due to its close association with older forests, and the owl population in Sierra National Forest is known to be in decline.

39.     The Kings River Project will adversely affect the California spotted owl, as Phase I alone is likely to impact more than 9,000 acres of suitable owl habitat, including a significant amount of owl Home Range Core Areas and related nest sites.  The proposed logging will result in the loss of important elements of owl habitat, such as the removal of medium and large trees and severe reductions in canopy cover.  The FEIS erroneously assumes that areas with trees greater than

1    12 inches in diameter and 40% canopy cover constitute "suitable" owl habitat, and that there will be

2    no impacts to owls as long as habitat is retained at these levels.

3        40.    The Kings River Project area is host to a wide range of sensitive species-at-risk and

4    management indicator species ("MIS") that require annual monitoring under the Sierra National

5    Forest LRMP and Appendix E of the 2001 Framework (which was retained by the 2004

6    Framework).  These include the Swainson's thrush, a species-at-risk that depends upon dense, closed

7    canopy forest conditions, and the Olive-sided flycatcher, a species-at-risk that depends upon burned

8    forest habitat.  The logging activities proposed in the Kings River Project will remove or degrade

9    suitable habitat for the Swainson's thrush and will create conditions that superficially mimic post-

10   fire habitat, drawing Olive-sided flycatchers into an "ecological trap" where they are unlikely to

11   survive or successfully reproduce.  Monitoring for these species in accordance with the Sierra

12   National Forest LRMP and the 2001 and 2004 Frameworks has not occurred.

13       41.    The Kings River Project area also includes several rare plant species, including

14   *Carpenteria californica* and *Lupinus citrinus* var. *citrinus*.  Monitoring for these species required by

15   the Sierra National Forest LRMP and the 2001 and 2004 Frameworks has not occurred.

**STATUTORY AND REGULATORY FRAMEWORK**

16

17   **The National Environmental Policy Act**

18       42.    The National Environmental Policy Act is our "basic national charter for the

19   protection of the environment."  40 C.F.R. § 1500.1.  Congress enacted NEPA "[t]o declare a

20   national policy which will encourage productive and enjoyable harmony between man and his

21   environment; to promote efforts which will prevent or eliminate damage to the environment and

22   biosphere and stimulate the health and welfare of man; [and] to enrich the understanding of the

23   ecological systems and natural resources important to the Nation."  42 U.S.C. § 4321.

24       43.    To accomplish these purposes, NEPA requires all agencies of the federal government

25   to prepare a "detailed statement" that discusses the environmental impacts of, and reasonable

26   alternatives to, all "major Federal actions significantly affecting the quality of the human

27   environment."  42 U.S.C. § 4332(2)(C).  This statement is commonly known as an environmental

28   impact statement ("EIS").

44.    The EIS process is intended "to help public officials make decisions that are based on understanding of environmental consequences, and to take actions that protect, restore, and enhance the environment" and to "insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken." 40 C.F.R. § 1500.1(b)-(c). The EIS must "provide full and fair discussion of significant environmental impacts and shall inform decision-makers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." *Id.* at § 1502.1.

**The National Forest Management Act**

45.    Congress enacted the National Forest Management Act in 1976 to reform the Forest Service's management of the National Forest System, primarily by requiring greater recognition of non-timber resources, such as wildlife, water, and soils, constraining the use of clearcutting, and requiring greater opportunities for public participation in forest planning.

46.    NFMA provides for a two-stage approach to land management planning. The Forest Service is first required to develop land and resource management plans for each National Forest. 16 U.S.C. § 1604(e). The LRMPs establish basic guidelines and set forth the planning elements that will be employed by the Forest Service in future actions in a particular forest, including use of the land for "outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness." *Id.* at § 1604(e)(1).

47.    Once an LRMP is approved, direct implementation occurs at a second stage where individual, site-specific projects are proposed and assessed. A site-specific project or decision, such as the Kings River Project, must be consistent with the LRMP for the larger area. 16 U.S.C. § 1604(i).

48.    NFMA requires the promulgation of regulations specifying guidelines for LRMPs that address a variety of resource management issues. 16 U.S.C. § 1604(g). In particular, the regulations must include guidelines that ensure LRMPs comply with NEPA, provide for the diversity of plant and animal communities in each National Forest, restrict timber harvesting to avoid irreversible damage to soils, slopes, and watersheds, and limit the use of clearcutting and other even-

1    aged timber harvest methods (*i.e.*, harvest methods that result in a replacement stand of trees of

2    identical age). *Id.*

3        49.    As required by NFMA, 16 U.S.C. § 1604(g), the Forest Service promulgated

4    regulations implementing the planning provisions of NFMA in 1982.  36 C.F.R. Part 219 (1982).

5    The 1982 regulations apply to the Kings River Project since the Sierra National Forest LRMP, as

6    amended by the 2004 Framework, was prepared in accordance with the 1982 regulations.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Violations of NEPA and the APA:**
**Failure to Adequately Analyze Impacts on Imperiled Wildlife and Plant Species,**
**Wildfire Risk, and Soils**

11        50.    Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in

12    the preceding paragraphs.

13        51.    NEPA requires all agencies of the federal government to prepare a "detailed

14    statement" that discusses the environmental impacts of, and reasonable alternatives to, all "major

15    Federal actions significantly affecting the quality of the human environment."  42 U.S.C. §

16    4332(2)(C).  An EIS must analyze "direct effects," which are "caused by the action and occur at the

17    same time and place," as well as "indirect effects which . . . are later in time or farther removed in

18    distance, but are still reasonably foreseeable."  40 C.F.R. § 1508.8.  An EIS must also consider the

19    cumulative impacts of the proposed federal agency action together with past, present and reasonably

20    foreseeable future actions, including all federal and non-federal activities.  *Id.* at § 1508.7.

21        52.    An EIS must be clear and supported by evidence that the agency has made the

22    necessary environmental analyses.  40 C.F.R. § 1502.1.  NEPA requires that the agency use the best

23    available data and ensure the scientific integrity of an EIS, disclose opposing scientific viewpoints,

24    and follow specified procedures to address gaps in data and scientific uncertainty.  *Id.* at §§ 1500.1,

25    1502.9, 1502.22, 1502.24.

26        53.    The FEIS for the Kings River Project fails to adequately analyze or take a hard look

27    at the Project's likely impacts on old forest dependent species and their habitat.  For example, the

28    FEIS provides inaccurate or inadequate information on the current status of the Pacific fisher, its

habitat in the Kings River Project area, and the significant adverse impacts of logging this habitat. The FEIS fails to consider the role of the Kings River Project in reducing suitable fisher habitat within the Southern Sierra Nevada Fisher Conservation Area.  The FEIS also provides an inadequate analysis of the amount and distribution of high quality habitat, home ranges, connective corridors, and other important habitat elements for the fisher that will be adversely affected by the Project.

54.     The FEIS fails to adequately evaluate impacts to the California spotted owl by inaccurately describing the species' habitat requirements and ignoring impacts from logging near nest sites and in Home Range Core Areas.  The FEIS also underestimates the short-term impacts to the owl from habitat loss, and fails to analyze impacts to the owl and its habitat either at the home range or the landscape scale.

55.     The FEIS fails to adequately analyze the Kings River Project's adverse impacts on sensitive plant species, including *Carpenteria californica* and *Lupinus citrinus* var. *citrinus*, resulting from ground-based logging, the conversion of early successional forests and native plant communities into conifer tree farms, and herbicide treatments intended to favor conifer growth.

56.     The FEIS claims to evaluate effects of the Project on wildlife and wildlife habitats by estimating the effects on certain management indicator species and species at risk.  As set forth below, however, defendants' monitoring and analyses for these species were inadequate and otherwise insufficient to support the conclusions in the FEIS.  Thus, the FEIS fails to adequately analyze the Kings River Project's adverse impacts on management indicator species and species at risk.

57.     The FEIS fails to take a hard look at the impacts of the proposed logging on fire resiliency, relying on a silvicultural modeling approach that does not reflect ecosystem conditions in the Project area.  The logging of medium and large diameter trees proposed by the Kings River Project will result in the removal of the most fire-resistant trees and reductions in forest canopy that will create hotter, drier conditions on the ground, allow increased wind speeds, and accelerate the growth of flammable brush and of dense, flammable stands of small conifers.  These conditions will not result in a more fire resilient forest but instead will increase the potential for and risk of severe fire in the Kings River Project area.

58.    The FEIS fails to adequately address impacts to soil resources within the Project area. For example, the FEIS does not provide adequate information regarding the location of current and planned landings and skid trails, or an adequate analysis of expected soil compaction rates from the proposed logging activities. The FEIS also fails to take a hard look at the Project's compliance with applicable regional standards for minimum numbers of large downed logs in the Project area, including a failure to describe the degree to which existing and post-project conditions will be out of compliance with such regional standards.

59.    The FEIS fails to adequately evaluate the cumulative impacts on old forest dependent species and wildfire risk from the logging permitted by the Project together with past, present, and reasonably foreseeable logging activities authorized under the 2004 Framework, as well as logging on private lands, in and around the Kings River Project area. Moreover, the FEIS does not adequately address the cumulative impacts of later Phases of the Kings River Project itself, even though the Forest Service is well aware of the locations and manner of proposed treatments.

60.    Defendants' failure in the FEIS to consider and evaluate the direct, indirect, and cumulative impacts to old forest species, plant species, wildfire risk, and soils of the Kings River Project area violated and is continuing to violate Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), and NEPA's implementing regulations, and was also arbitrary, capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by law within the meaning of the APA, 5 U.S.C. § 706(2).

## SECOND CLAIM FOR RELIEF

### Violations of NEPA and the APA:
### Failure to Adequately Evaluate Project Alternatives

61.    Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

62.    The alternatives analysis is considered to be the "heart" of an EIS. 40 C.F.R. § 1502.14. An EIS "should present the environmental impacts of the proposal and the alternatives in comparative form, thus sharply defining the issues and providing a clear choice among options by the decisionmaker and the public." *Id.* NEPA requires the Forest Service to "rigorously explore and

1    objectively evaluate all reasonable alternatives," and to "devote substantial treatment to each

2    alternative . . . so that reviewers may evaluate their comparative merits."  *Id.*

3        63.    NEPA also requires that an EIS "briefly specify the underlying purpose and need to

4    which the agency is responding in proposing the alternatives including the proposed action."  40

5    C.F.R. § 1502.13.  An agency must not define its project purpose and need so narrowly as to

6    preclude consideration of reasonable alternatives.

7        64.    The FEIS for the Kings River Project states that the "underlying purpose of the

8    proposed action is to restore historical pre-1850 forest conditions across a large landscape," and in

9    doing so, to reduce wildfire risk and preserve wildlife habitat.  The FEIS then analyzes in detail only

10   two alternatives other than the No Action Alternative (Alternative 2) to meet this purpose: the

11   Proposed Action (Alternative 1) and the Reduction of Tree Harvest Size Alternative (Alternative 3).

12       65.    A number of reasonable alternatives were suggested during the scoping period and

13   public comment period on the draft EIS for the Kings River Project, but were not analyzed in the

14   FEIS.  For example, the California Attorney General's Office, the U.S. Environmental Protection

15   Agency, and plaintiffs all suggested specific alternatives that would achieve the Project's stated

16   purpose and need of fire risk reduction and yet be more protective of old forest dependant species.

17   These included an alternative that would apply the management direction in the 2001 Framework, as

18   well as an alternative that would involve lower diameter limits and less intensive logging treatments.

19   None of these alternatives was adequately evaluated by defendants in the FEIS.

20       66.    In analyzing alternatives, the Forest Service also failed to take a hard look at whether

21   alternatives with less environmental impact would achieve the agency's stated objectives for fuel

22   reduction, forest health, and restoration of historical pre-1850 forest conditions across a large

23   landscape.  For example, while the FEIS shows that the current average density of trees between 20

24   and 30 inches in diameter is already within the "desired range" sought by the Forest Service for the

25   Kings River Project, the agency improperly dismisses alternatives with lower diameter limits as

26   failing to meet the Project's purpose and need.

27       67.    Defendants' failure in the FEIS to adequately evaluate all reasonable alternatives to

28   the chosen action and its failure to take a hard look at environmentally preferable alternatives

1    violated and is continuing to violate Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), and

2    NEPA's implementing regulations, and was arbitrary, capricious, an abuse of discretion, not in

3    accordance with law, and without observance of procedure required by law within the meaning of

4    the APA, 5 U.S.C. § 706(2).

5                              **THIRD CLAIM FOR RELIEF**

6                              **Violations of NEPA and the APA:**
     **Failure to Adequately Respond to Comments or Disclose and Respond to Scientific**
7                              **Information and Opposition**

8        68.     Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in

9    the preceding paragraphs.

10       69.     NEPA requires that the Forest Service respond to comments both individually and

11   collectively in the FEIS.  40 C.F.R. § 1503.4.  The Forest Service must respond by: (1) modifying

12   alternatives, including the proposed action; (2) developing and evaluating alternatives not previously

13   considered by the agency; (3) supplementing, improving, or modifying its analysis; or (4) making

14   factual corrections.  *Id.* at § 1503.4(a).  If the Forest Service feels that no further response is

15   necessary, it must "explain why the comments do not warrant further agency response, citing the

16   sources, authorities, or reasons which support the agency's position."  *Id.*

17       70.     NEPA also requires that the Forest Service ensure the "scientific integrity" of the EIS,

18   40 C.F.R. § 1502.24, and "shall discuss at appropriate points in the final statement any responsible

19   opposing view which was not adequately discussed in the draft statement and shall indicate the

20   agency's response to the issues raised."  *Id.* at § 1502.9(b).

21       71.     The FEIS for the Kings River Project fails to adequately respond to public comments

22   submitted by plaintiffs and other interested parties on the draft EIS regarding the substantive issues

23   and errors alleged herein, as well as to other substantive public comments submitted on other NEPA

24   documents.  For example, the FEIS ignored or failed to respond meaningfully to comments

25   submitted by plaintiffs regarding scientific inaccuracies and inconsistent data in the Forest Service's

26   analysis of the Kings River Project's impacts on imperiled wildlife and plant species and wildfire

27   risk.

28

72.    The FEIS fails to adequately disclose or respond to scientific information and opposition.  For example, the FEIS does not disclose or adequately discuss potential adverse impacts and short-term risks to imperiled populations of the Pacific fisher and California spotted owl as presented by the leading experts on these species.  The Forest Service also ignored scientific information demonstrating that the goals of the Project could be met while maintaining the higher canopy cover and greater number of medium and large size trees necessary to support old forest habitat conditions.

73.    Defendants' failure in the FEIS to respond meaningfully to comments or scientific information and opposition regarding the Kings River Project violated and is continuing to violate Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), and NEPA's implementing regulations, and was arbitrary, capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by law within the meaning of the APA, 5 U.S.C. § 706(2).

## FOURTH CLAIM FOR RELIEF

### Violations of NFMA and the APA:
### Failure to Maintain Viability of the Pacific Fisher

74.    Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

75.    Forest plans promulgated pursuant to NFMA must, among other things, "provide for diversity of plant and animal communities based on the suitability and capability of the specific land area in order to meet overall multiple-use objectives . . . ."  16 U.S.C. § 1604(g)(3)(B).  To carry out NFMA's diversity requirement, the Forest Service is required to manage fish and wildlife habitat so as "to maintain viable populations of existing native and desired non-native vertebrate species in the planning area."  36 C.F.R. § 219.19.  A "viable population" is "one which has the estimated numbers and distribution of reproductive individuals to insure its continued existence is well distributed in the planning area.  In order to insure that viable populations will be maintained, habitat must be provided to support, at least, a minimum number of reproductive individuals and that habitat must be well distributed so that those individuals can interact with others in the planning area."  *Id.*

76. The Kings River Project fails to comply with NFMA by threatening the viability and distribution of the Pacific fisher. As alleged above, the U.S. Fish and Wildlife Service has determined that the southern Sierra population of the Pacific fisher is at significant risk of extinction. Recent data indicates that the fisher population may number just 100 to 500 individuals, with some studies estimating that there may be as few as 50 females remaining.

77. Despite the fisher's precarious status, the Kings River Project proposes significant logging in prime fisher habitat without adequate data to determine how fisher can survive in the Project area. In particular, the logging proposed for Phase I of the Kings River Project, which contains over 13,700 acres of suitable fisher habitat and portions of at least 13 fisher home ranges, will adversely affect key attributes of suitable fisher habitat such as large trees, canopy cover, and large snags and downed logs, and will create a significant gap in remaining fisher habitat in the southern Sierra Nevada. The entire Project may adversely impact approximately 5% of the Southern Sierra Nevada Fisher Conservation Area designed for protection in the 2001 Framework.

78. Defendants' failure in the Kings River Project to insure the viability and distribution of the Pacific fisher, as described above, violated and is continuing to violate NFMA, 16 U.S.C. § 1604(g)(3)(B) and 36 C.F.R. § 219.19, and was also arbitrary, capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by law within the meaning of the APA, 5 U.S.C. § 706(2).

**FIFTH CLAIM FOR RELIEF**

**Violations of NFMA and the APA:**
**Failure to Monitor and Inventory Management Indicator Species and Species at Risk**

79. Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

80. In providing for the diversity of plant and animal communities, NFMA regulations mandate that the Forest Service select and monitor certain wildlife species as proxies for the health of broader wildlife populations and of the specific ecosystems that these species inhabit. Specifically, the regulations require that "[i]n order to estimate the effects of each alternative on fish and wildlife populations, certain vertebrate and/or invertebrate species present in the area shall be

identified and selected as management indicator species" based upon a finding that "their population changes are believed to indicate the effects of management activities." 36 C.F.R. § 219.19(a)(1). The regulations further provide that "[p]lanning alternatives shall be stated and evaluated in terms of both amount and quality of habitat and of animal population trends of the management indicator species," and "[p]opulation trends of the management indicator species will be monitored and relationships to habitat changes determined." *Id.* at § 219.19(a)(2), (6).

81.     NFMA also requires that "[e]ach Forest Supervisor shall obtain and keep current inventory data appropriate for planning and managing the resources under his or her administrative jurisdiction." 36 C.F.R. § 219.12(d).  Further, "[f]orest planning shall provide for diversity of plant and animal communities and tree species consistent with the overall multiple use objectives of the planning area.  Such diversity shall be considered throughout the planning process.  Inventories shall include quantitative data making possible the evaluation of diversity in terms of its prior and present condition." *Id*. at § 219.26.

82.     To comply with the above provisions of the NFMA regulations, the Forest Service has designated management indicator species at the Sierra Nevada regional level as well as individually for each of the eleven Sierra Nevada national forests, including Sierra National Forest. Appendix E of the 2001 Framework requires annual population monitoring of certain designated management indicator species and species at risk in all Sierra Nevada national forests.  This requirement was adopted in the 2004 Framework.

83.      "Management indicator species" are chosen to represent groups of species with similar habitat requirements, such that maintenance of viable population levels of these species will provide for viable populations of the remaining species in the group they represent.  "Species at risk" are those with a high level of concern regarding population status and that occur in old forest ecosystems.

84.     The Sierra National Forest LRMP requires annual population and trend monitoring for several avian species in various habitats.  The Sierra National Forest LRMP also requires the Forest Service to minimize or eliminate direct and indirect impacts from management activities on

threatened, endangered, and sensitive plants unless the activity is designed to maintain or improve plant populations.

85.    The Forest Service failed to follow the requirements for management indicator species and species at risk analysis and inventories specified in Appendix E of the 2001 Framework and the Sierra National Forest LRMP.  Required population data for species at risk have not been gathered, and baseline, trend, and/or current inventory data for many management indicator species do not exist or have not been maintained.

86.    For example, for eleven of the species analyzed in the FEIS for the Kings River Project, including the Olive-sided flycatcher, the monitoring required by the Sierra National Forest LRMP and Appendix E of the 2001 Framework has not been completed.  There are also 28 additional species listed in Appendix E, such as the Swainson's Thrush, which may be affected by Phase I of the Kings River Project but were not discussed in the FEIS.

87.     Population trends for avian species in Sierra National Forest were reported by using information provided in the federal Breeding Bird Survey program.  However, this program fails to meet the population monitoring requirements of NFMA because the survey routes selected do not occur on Sierra National Forest lands and do not provide data representative of population trends in Sierra National Forest.  In addition, data from the Breeding Bird Survey program is too sparse, limited, and unreliable to comply with the requirements in Appendix E of the 2001 Framework.

88.    The FEIS does not quantify habitat changes from past, present, or reasonable foreseeable reforestation projects that would permanently eliminate suitable habitat for sensitive plant species, and also lacks viability analysis based on annual inventory of sensitive species.

89.    Defendants' failure to adequately monitor or obtain inventory information on management indicator species and species at risk prior to its approval of the Kings River Project as described above violated and is continuing to violate NFMA and its implementing regulations, 36 C.F.R. §§ 219.12, 219.19, and 219.26, and is also arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, and without observance of procedure required by law, within the meaning of the APA, 5 U.S.C. § 706(2).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                    21

90.    Timber sales, logging, and related activities on national forest lands, and the permits, contracts, and other instruments associated with them, must be consistent with the LRMP applicable to that particular national forest.  16 U.S.C. § 1604(i); 36 C.F.R. § 219.10(e).  The Kings River Project is not consistent with the forest plan for Sierra National Forest, however, because the Forest Service has not complied with the management indicator species and species at risk population monitoring requirements of the 2001 Framework, as adopted by the 2004 Framework, as well as the Sierra National Forest LRMP.

91.    Defendants' failure to ensure the consistency of the Kings River Project with the Sierra National Forest LRMP, as amended by the 2001 and 2004 Frameworks, therefore violated NFMA, 16 U.S.C. § 1604(i) and 36 C.F.R. § 219.10(e), and was also arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, and without observance of procedure required by law, within the meaning of the APA, 5 U.S.C. § 706(2).

### SIXTH CLAIM FOR RELIEF

**Violations of NFMA and the APA:**
**Failure to Comply with Soil Quality Standards**

92.    Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

93.    NFMA requires that forest plans and site-specific projects implemented by the Forest Service must, among other things, avoid irreversible damage to soils, slopes, and watersheds, and must prevent significant or permanent impairment of the productivity of the land.  16 U.S.C. § 1604(g); 36 C.F.R. § 219.27.  The Sierra National Forest LRMP, the Region 5 Soil Quality Standards, and the Forest Service-wide soil management handbook establish soil properties, conditions, and threshold values to avoid detrimental soil disturbance.

94.    The proposed logging and other activities authorized by the Kings River Project fail to avoid detrimental and irreversible damage to soils in the Project area and violate the applicable regional standards for large woody debris and compacted soils.  In particular, the Project does not provide adequate information regarding post-treatment soil quality in the Project area, and fails to provide adequate information to show that the Project area is currently in compliance with regional

1  standards for minimum numbers of large downed logs per acre or how the Project will further reduce

2  current levels of large downed logs below the minimum regional standard.

3      95.    Defendants' failure to comply with the soil quality standards for the Kings River

4  Project as described above violated and is continuing to violate NFMA, 16 U.S.C. § 1604(g) and 36

5  C.F.R. § 219.27, and was also arbitrary, capricious, an abuse of discretion, not in accordance with

6  law, and without observance of procedure required by law within the meaning of the APA, 5 U.S.C.

7  § 706(2).

8                         **PRAYER FOR RELIEF**

9      WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor

10  and grant the following relief:

11      A.    Issue a declaratory judgment that:

12          1.    Defendants' approval of the Kings River Project and the associated Record of

13  Decision and Final Environmental Impact Statement failed to comply with the National

14  Environmental Policy Act and National Forest Management Act and their respective implementing

15  regulations;

16          2.    Defendants' approval of the Kings River Project and the associated Record of

17  Decision and Final Environmental Impact Statement was arbitrary, capricious, an abuse of

18  discretion, or otherwise not in accordance with law; was without observance of procedure required

19  by law; and was unsupported by substantial evidence, in violation of the APA, 5 U.S.C. § 706(2);

20      B.    Hold unlawful and set aside the Kings River Project and the associated Record of

21  Decision and Final Environmental Impact Statement, and enjoin implementation of the Project,

22  including but not limited to the advertisement of timber sales, solicitation of bids, award of contracts,

23  or authorization of the commencement of logging or other activities pursuant to the Project;

24      C.    Order defendants to prepare an environmental impact statement for any new proposed

25  Kings River Project that fully complies with NEPA and NFMA;

26      D.    Award plaintiffs their costs and expenses (including reasonable attorney, expert

27  witness, and consultant fees); and

28      E.    Award plaintiffs such further relief as the Court deems appropriate.

1    DATED: May 18, 2007                    Respectfully submitted,

2

3                                           GEORGE M. TORGUN
                                            MICHAEL R. SHERWOOD
4                                           MICHAEL GRAF

5                                           Attorneys for Plaintiffs Sierra Forest Legacy, Sierra
                                            Club, and California Native Plant Society
6
                                            /s/ Rachel Fazio (as authorized 5/18/07)
7                                           RACHEL M. FAZIO

8                                           Attorney for Plaintiff Earth Island Institute

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28