IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and PACIFIC ENVIRONMENT,<br><br>        Plaintiffs,<br><br>    v.<br><br>DIRK KEMPTHORNE. Secretary of the Interior, and UNITED STATES FISH AND WILDLIFE SERVICE,<br><br>        Defendants,<br><br>    and<br><br>ALASKA OIL AND GAS ASSOCIATION,<br><br>        Defendant/Intervenor.<br>_____ / | No. C-07-0894 EDL<br><br>**ORDER GRANTING MOTION TO TRANSFER** |

This case for declaratory and injunctive relief was filed pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702-706, by the Center for Biological Diversity and Pacific Environment. Plaintiffs allege that Defendants Dirk Kempthorne, United States Secretary of the Interior, and the United States Fish and Wildlife Service ("FWS") failed to comply with the Marine Mammal Protection Act ("MMPA") (16 U.S.C. § 1361 et seq. (2006)), and the National Environmental Policy Act ("NEPA") (42 U.S.C. § 4321-4370(f) (2006)). Compl. ¶ 1. Plaintiffs seek judicial review of a final rule promulgated by the FWS on August 2, 2006 pursuant to the MMPA that authorizes the "incidental take" of polar bears and Pacific walrus for five years resulting from any oil and gas industry activities in the Beaufort Sea and the adjacent coastal areas. Compl. at

**ATTACHMENT 1**

¶ 2 (citing 71 Fed. Reg. 43,926 (Aug. 2, 2006) (codified at 50 C.F.R. §§ 18.121-129)). The Beaufort Sea is located off the northern coast of Alaska and western Canada. Id. at ¶ 26. Plaintiffs also challenge under NEPA the accompanying Environmental Assessment and "finding of no significant impact" issued by the FWS. Id. Plaintiffs allege that "[o]ver the past decade, global warming has dramatically altered the Arctic, causing significant reductions in sea ice, and adversely affecting ice-dependent species such as the Pacific walrus and polar bear." Id. at ¶ 3. Plaintiffs further allege that, "[n]otwithstanding the well-documented recent impacts of global warming on the polar bear and the Pacific walrus, FWS promulgated its incidental take regulations for these species without seriously analyzing the effects of global warming on them and their habitat." Id. at ¶ 4.

On May 10, 2007, the federal Defendants filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) from this district to either the District of Alaska or the District Court for the District of Columbia. Intervenor-Defendant Alaska Oil and Gas Association ("AOGA") joined in the motion. Plaintiff opposed the transfer. All the parties agree that venue is proper in this district or in either of the two districts proposed by Defendants. This matter was fully briefed and came on for hearing on June 26, 2007. Because the balance of factors tips the scale slightly in favor of transferring this matter to another district, the Court GRANTS Defendants' motion and ORDERS this case to be transferred to the District of Alaska.

## I. BACKGROUND

### A. The Parties

Plaintiff Pacific Environment is incorporated in California and has its organizational headquarters in San Francisco. Pls' Opp. at 1 (citing Declaration of David Gordon at ¶ 4) ("Gordon Decl."). Pacific Environment's decisions to litigate issues affecting polar bears are made by its board, on advice of its executive director, who is based in San Francisco. Gordon Decl. at ¶ 9.

The Center is a non-profit organization with offices in San Francisco, Joshua Tree and San Diego, California; Phoenix and Tucson, Arizona; Silver City, New Mexico; Portland, Oregon; and Washington, D.C. Compl. at ¶ 9. The Center is incorporated in New Mexico but runs its climate and ocean protection efforts out of California. Pls' Opp. at 1 (citing Declaration of Kassia R. Siegel at ¶¶ 4-5) ("Siegel Decl."). The Center's California-based staff directs and conducts its advocacy

1 and litigation related to the polar bear and the impacts of global warming on the species. Siegel
2 Decl. at ¶¶ 2, 6.

3 Defendant Dirk Kempthorne, as the United States Secretary of the Interior, is sued in his
4 official capacity as having ultimate responsibility for the administration and implementation of the
5 MMPA with regard to the polar bear and Pacific walrus. Compl. at ¶ 16. Defendant FWS is a
6 federal agency within the Department of Interior authorized and required by law to protect and
7 manage the fish, wildlife, and native plant resources of the United States, including enforcing the
8 MMPA. The Secretary of Interior delegated to the FWS the authority to implement the MMPA for
9 the polar bear and Pacific walrus, including promulgating the regulations at issue in this case.
10 Compl. at ¶ 17.

11 Intervenor-defendant AOGA is a private, non-profit trade association whose 16 members
12 engage in the majority of oil and gas exploration, production, transportation, refining and marketing
13 activities in Alaska, including within the Beaufort Sea and adjacent coastal areas. AOGA's Mem. in
14 Sup. of Mot. to Int. at 1 (filed Apr. 27, 2007). In August 2005, AOGA petitioned the FWS to renew
15 the regulations governing the issuance of Letters of Authorization which allow the take of marine
16 mammals incidental to oil and gas activities on the Alaskan North Slope. Id. at 2. AOGA filed an
17 unopposed motion to intervene as a defendant in all phases of this action, which was granted on May
18 31, 2007. (Dkt. No. 23).

19 **B. History of Administrative Proceedings**

20 On August 23, 2002, AOGA submitted a request that the FWS promulgate regulations for
21 nonlethal incidental take of small numbers of Pacific walrus and polar bears for a period of five years,
22 originally projected to be from March 31, 2003, through March 31, 2008. Defs' Mot. at 4 (citing 71
23 Fed. Reg. at 43,927). On March 22, 2006, the FWS issued proposed regulations that would authorize
24 the nonlethal, incidental, unintentional take of small numbers of polar bears and Pacific walrus during
25 oil and gas industry exploration, development, and production operations in the Beaufort Sea and the
26 adjacent northern coast of Alaska. Id. (citing 71 Fed. Reg. 14,446 (Mar. 22, 2006)) (the "Proposed ITR
27 Rule"). The Proposed ITR Rule contained a finding that the total expected takings of polar bear and
28 Pacific walrus during oil and gas industry activities will have a negligible impact on these species and

3

will not have an unmitigable adverse impact on the availability of these species for subsistence by Alaska natives, and allowed comments from the public within 30 days. Id. On April 21, 2006, Plaintiffs submitted their comments to the Proposed ITR Rule describing their concerns related to "impact of oil and gas exploration, development and production activities on polar bears and Pacific walrus and on the communities dependent on these species." Siegel Decl., Ex. 1.[1]

On August 2, 2006, the FWS issued the decision at issue in this case. Defs' Mot. at 5. FWS's decision adopted regulations that cover: (1) permissible methods of nonlethal taking in the course of oil and gas industry activities in the Beaufort Sea and adjacent northern coast of Alaska; (2) measures to ensure the least practicable adverse impact on the species and the availability of these species for subsistence use by Alaska Natives; and (3) requirements for monitoring and reporting. 71 Fed. Reg. at 43,927. FWS also prepared a final Environmental Assessment pursuant to NEPA and issued a Finding of No Significant Impact ("FONSI") in connection with it. 71 Fed. Reg. at 43,949. The FWS's "office in Anchorage, Alaska, developed the draft proposed and draft final rules," which were then "transmitted to Washington, D.C. where they were substantively reviewed by a number of [FWS] and Department officials." See Defs' Mot. at 9 (citing Declaration of Kenneth Stansell at ¶ 9 ("Stansell Decl.")). "None of the decision-making process occurred in California." Stansell Decl. at ¶ 9.

## II. MOTION TO TRANSFER VENUE

### A. Legal Standard

Defendants contend that this case should be transferred to either the District of Alaska or the District for the District of Columbia pursuant to 28 U.S.C. § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Determining whether an action should be transferred pursuant to § 1404(a) is a two-step process. The transferor court must first determine whether the action "might have been brought" in the transferee court, and then the court must make an "individualized, case-by-case consideration of convenience and fairness." Inherent.com v.

---

[1] Although the federal Defendants initially stated that Pacific Environment did not submit comments to the Proposed ITR Rule, Exhibit 1 to the Siegel Declaration makes clear that the April 21, 2006 comments were "submitted on behalf of the Center for Biological Diversity, Pacific Environment, and the Northern Alaska Environmental Center." Siegel Decl., Ex. 1. at 1.

4

Martindale-Hubbell, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (citing Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985); Jones v. GNC Franchising, 211 F.3d 495, 498 (9th Cir. 2000)). The burden is on the defendant to show that transfer is appropriate. See Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir.1979).

There is no dispute that the first prong of the Court's analysis is met here. This action might have been brought under 28 U.S.C. § 1391(e) in either the District of Columbia or the District of Alaska because the federal Defendants reside in Washington, D.C., and a substantial part of the alleged events and omissions occurred in the District of Alaska.[2]

As to the second prong of the § 1404(a) analysis, the statute instructs the Court to consider at least three factors in deciding whether to transfer a case to another court: (1) convenience of parties; (2) convenience of witnesses; and (3) the interest of justice. Ninth Circuit precedent requires a fourth factor be weighed: the plaintiff's choice of forum. See Securities Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985). "Weighing of these factors for and against transfer involves subtle considerations" and is left to the discretion of the transferor court. Savage, 611 F.2d at 279.

In determining the convenience of the parties and witnesses and the interests of justice, a court may consider a number of factors including:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time [to] trial in each forum.

Gerin v. Aegon USA, Inc., No. C 06-5407, 2007 WL 1033472, at *4 (N.D. Cal., Apr. 4, 2007) (citing Jones, 211 F.3d at 498-99).

In the usual case, unless the balance of the § 1404(a) factors weighs heavily in favor of the defendants, "the plaintiff's choice of forum should rarely be disturbed." Securities Investor, 764 F.2d at 1317; see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986)

---

[2] Section 1391(e) states that "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States. . . may . . . be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e).

("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum"). However, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." Pacific Car and Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968). "The degree to which courts defer to the plaintiff's venue choice is substantially reduced where the plaintiff's venue choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint." Fabus Co. v. Asiana Exp. Co., 2001 WL 253185 at *1 (N.D. Cal., Mar. 1, 2001).

### B. The Parties' Arguments

Defendants argue that the interest of justice will be best served by transferring this case because (1) the Northern District of California has no meaningful ties to this case; (2) the subject of the FWS's August 2, 2006 decision relates to the incidental take of polar bears and Pacific walrus that inhabit the Beaufort Sea and adjacent costal areas of Northern Alaska; (3) any resolution of this case will primarily affect the residents of Alaska, not California; (4) Plaintiff's alleged standing in this case derives solely from the fact that they and their members use and enjoy the Beaufort sea and adjacent northern coast of Alaska to view and experience polar bears and Pacific walrus that live in the area; (5) the FWS decision at issue was drafted in Anchorage, Alaska and signed in Washington, D.C.; and (6) all of the documents that comprise the administrative record are located in Washington, D.C. and Anchorage, Alaska.[3] Defs' Mot. at 1, 15; see also Stansell Decl. at ¶¶ 8, 9.

In support of their argument that the Northern District does not have meaningful ties to this case, Defendants state that "there was no involvement in the challenged rulemaking by the Department of Interior or FWS officials located in the Northern District of California." Defs' Mot. at 10. Rather, "the only offices of the Federal defendants that were involved in the decision-making are located in

---

[3] Defendants state that "[a]ll of the documents that will comprise the administrative record for the final rule authorizing incidental taking of small numbers of polar bears and walruses associated with oil and gas exploration, development, and production activities in the Beaufort Sea and adjacent northern coast of Alaska are located in the [FWS] and Department [of Interior] offices in Washington, D.C. and Anchorage, Alaska. No documents relevant to the final rule are located in California." Defs' Mot., Declaration of Kenneth Stansell at ¶ 9 ("Stansell Decl."). Defendants do not argue that the location of documents impacts the convenience of the parties or witnesses. Rather, Defendants appear to argue that the absence of documents in California and the presence of documents in Washington, D.C. and Alaska weighs in favor of transfer to either of the suggested transferee courts.

6

Washington, D.C. and Anchorage, Alaska." Id. Defendants also point out that only one Plaintiff, Pacific Environment, actually resides in this District, id. at 11, and that no documents related to the final rule are located in California. Id. at 15.

Defendants further argue that, although Pacific Environment resides in this district, adjudicating this case in the proposed transferee courts will not inconvenience Plaintiffs. Defendants note that Pacific Environment opened an office in Anchorage, Alaska in December 2005 for the purpose of "deepen[ing its] collaboration with environmentalists, fisherpeople, Native Alaskans and government officials." Defs' Reply at 8 (citing Ex. 1, Pacific Environment, Annual Report, 2005-2006). With respect to the Center, AOGA points out that, "though it does not keep an Alaska office, [it] has frequently brought suit in the Alaska federal district court, thus negating any claims of inconvenience." AOGA's Reply at 9 (citing cases).

Finally, in support of their argument that the suggested transferee courts have vastly greater ties to the issues in controversy in this case than the Northern District of California, Defendants point out that the FWS decision at issue relates to polar bears and Pacific walrus that inhabit the Beaufort Sea off the coast of Northern Alaska. Therefore, any resolution of this case will primarily affect the residents of Alaska. Id. at 15. Defendants further argue that the FWS decision contains an extensive analysis of how expected incidental take will affect the availability of polar bears and Pacific walrus for subsistence use by Alaska Native communities in northern Alaska. See 71 Fed. Reg. at 43,952. The decision requires the oil and gas companies to engage in community meetings and ascertain if community responses indicate that conflicts with Native Alaskans' subsistence uses of polar bears and walruses may occur as a result of activities conducted or requested by the oil and gas companies. Id. If community concerns suggest that industry activities may have an impact on the subsistence uses of these species, the companies must submit a Plan of Cooperation that ensures that the activities will not interfere with subsistence harvest of polar bears and Pacific walrus. Id. Thus, according to Defendants, the decision most directly affects the Alaska Native communities in Northern Alaska and the companies that operate there. Defs' Mot. at 15-16.

In opposing Defendants' motion, Plaintiffs argue that (1) their choice of forum is entitled to considerable deference and (2) Defendants have not met the heavy burden of justifying a change in

7

venue. Plaintiffs argue that the convenience of the parties favors maintaining the case in this District because both Plaintiffs maintain offices in this District, which is not true of the proposed transferee districts presented by Defendants. Pls' Opp. at 9.

Plaintiffs further argue that Northern District's interest in this case weighs against transfer because (1) California has an interest in litigation regarding its residents, and (2) there is considerable national interest (and indeed international interest) in polar bear conservation and management such that this case presents issues of national concern. Pls' Opp. at 11. Plaintiffs concede that "it is true that residents of Alaska may also be affected by the resolution of this case," but argue that "the considerable national interest in polar bear conservation and management" extends far beyond Alaska's borders. Id.

### C. Analysis

In contrast to most cases in federal court, environmental cases are typically resolved by the court examining the administrative record to decide cross-motions for summary judgment. Accordingly, the factors set forth in the transfer statute, § 1404(a), and cases applying it, such as Gerin, supra, are for the most part not implicated. There are no witnesses to consider, and documentary evidence is as easily provided in one venue as another, especially in this age of electronic transmission. The proposed transferee courts are equally familiar with the environmental laws at issue. No one has proposed any potential for consolidation in any of the venues. Nor is there any major difference in the relative congestion of the court calendars. Therefore, as in most environmental cases, the issue of which federal district should adjudicate the issues is determined by weighing a plaintiff's choice of forum against the competing interest in "having localized controversies decided at home." Piper Aircraft v. Reyno, 454 U.S. 235, 241 n. 6 (1981) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)); see also Wright, Miller & Cooper, Federal Practice and Procedure § 3854 (3d ed. 2007) (noting that, especially in environmental cases, "[a]n additional reason for litigating in the forum that encompasses the locus of operative facts is the local interest in having local controversies resolved at home. . . .").

Several decisions from the United States District Court for the District of Columbia regarding actions by federal agencies that impact the environment outside of that district articulate the rationale for favoring the forum that has a local interest or connection to the activities alleged in the complaint. For example, in Sierra Club v. Flowers, 276 F.Supp.2d 62, 66, 71 (D.D.C. 2003), the court found that

transfer to Florida was appropriate even where the parties, their counsel and some of the agency decision-makers were located in Washington, D.C. on the basis that "the decision to issue [mining permits for certain Everglades wetlands in southern Florida] is a controversy local to Florida and is one in which Florida and its residents have a great interest."; see also National Wildlife Federation v. Harvey, 437 F.Supp.2d 42 (D.D.C. 2006) (in granting the motion to transfer a lawsuit related to the effects of a federal water management program on an endangered bird population in Florida, the court noted that the nexus between the plaintiffs' chosen forum and the facts of the controversy was attenuated compared with the direct and substantial impact that the litigation could have on Florida residents and wildlife). Similarly, in Southern Utah Wilderness Alliance v. Norton, 2004 WL 896522 (D.D.C., Apr. 27, 2004), the court granted a motion to transfer to the District of Utah in a case involving an agency decision to permit twenty-one oil and gas leases on federal lands in Utah, noting "[l]and is a localized interest because its management directly touches local citizens." Id. at *6; see also Trout Unlimited v. U.S. Dep't of Agric., 944 F.Supp. 13, 19 (D.D.C. 1996) (court transferred to Colorado case involving "water rights, environmental regulation, and local wildlife" on National Forest land in Colorado).

Plaintiffs' counsel correctly indicated at the hearing that the Flowers case cautions district courts in the D.C. Circuit to "examine challenges to venue particularly carefully 'to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. . . 'by naming high government officials as defendants. . . [and] bring[ing] a suit [t]here that properly should be pursued elsewhere.'" Flowers, 276 F.Supp.2d at 65 (citing Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993)). However, in Flowers, as in the present case, there was no suggestion that Plaintiffs were attempting to "manufacture venue" in the district where they filed their complaint. Rather, despite the fact that both plaintiffs and defendants had offices in that district, the court found that "the parties' presence in the District of Columbia is overshadowed by the lack of evidence that federal officials in this forum 'played an active or significant role' in the decision to issue permits. . . . [and that] the lack of meaningful ties between the controversy and the District of Columbia stands in sharp contrast to the significant ties. . .between the controversy and Florida." Id. at 67-68 (citations omitted).

Plaintiffs argue that this case is more like The Wilderness Society v. Babbitt, 104 F.Supp.2d 10 (D.D.C. 2000), where the court denied the defendants' motion to transfer. In The Wilderness Society,

9

various environmental groups – four of which were headquartered in Washington, D.C. – filed a lawsuit alleging that defendants violated NEPA after issuing a decision to open an area in Alaska to oil and gas leasing. In denying defendants' motion to transfer the case to the District of Alaska, the court concluded that the involvement of the defendant Secretary of the Interior, who was located in the District of Columbia, was "far from routine." To the contrary, he was directly involved in the assessment of the environmental impact caused by oil, having visited the affected area in Alaska for six days and met with local and industry residents, officials and scientists there. Further, he signed the Record of Decision allowing oil and gas leases and briefed the public on the decision in Washington, D.C. Id. at 14. The court distinguished The Wilderness Society case from other cases where transfer to districts with a local interest in the controversy was granted by stating, "Secretary Babbitt's heavy involvement thus highlights the significance of this issue to the entire nation. By contrast, the Secretary of the Interior was not directly involved in the local environmental controversies at Trout Unlimited and Hawksbill, and all decision-making in those cases took place outside of the District of Columbia." Id. at 14 (citing Trout Unlimited, supra, and Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency, 939 F. Supp. 1 (D.D.C. 1996)).

      The present case, at its core, involves the environmental impact of oil and gas industry activities in the Beaufort Sea and adjacent coast of Northern Alaska. Although Plaintiffs' arguments in favor of adjudicating this case in the Northern District of California have some merit, they do not fully offset the countervailing aspects to be considered by the Court such as the fact that none of the operative facts occurred within this district and the challenged FWS decision authorizing the "incidental take" of polar bears and Pacific walrus as part of industrial oil and gas exploration, development, and production activities in Alaska is one in which Alaska and its residents have a great interest. Plaintiffs are correct that interest in these species transcends state and, indeed, international boundaries, with the bears and walrus also inhabiting Canadian waters and with international attention focused on the polar bears' survival in the face of possibly melting ice. However, widespread concern does not by itself resolve the question of which of the proposed federal forums is the most appropriate. Weighing all of the relevant circumstances, the Court concludes that Alaska provides the most appropriate forum.

//

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer is GRANTED. This case is hereby transferred to the District of Alaska pursuant to 28 U.S.C. § 1404(a). The Clerk is instructed to transfer the file in accordance with Civil L.R. 3-14.

IT IS SO ORDERED.

Dated: July 12, 2007

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge

11